24-3154 Berberich v. Kansas City Southern Railway Mr. Delbridge yes sir good morning may it please the court my name is Charles Delbridge and I'm here on behalf of the plaintiff appellant Justin Berberich I'm going to try to reserve five minutes for rebuttal the district court erred by impermissibly weighing the credibility of conflicting testimony at summary judgment when it discounted the testimony of Jeff Spigarelli as supposedly being unreliable that error warrants reversal and remand for trial on Berberich's remaining FRSA claim I'm going to focus my argument on Jeff Spigarelli's testimony and the district courts treatment of it because I think that issue is is the most important issue on appeal here and specifically I'm going to focus on an argument that Kansas City Southern made in the briefing that the district court did not actually weigh the credibility of Mr. Spigarelli's testimony but rather made an admissibility determination regarding that testimony and excluded it from evidence I want to respond to that argument and I've got three points I want to make in response to that argument I'll roadmap them here right now and then I'll go into some more about each but first that argument is just contrary to what the district court said the district court explicitly weighed credibility explicitly did not make an admissibility determination as to that testimony number two putting aside what the district court said it's also incorrect to argue that mr. Spigarelli's testimony is inadmissible it's plainly admissible under the rules of evidence that govern that govern the proceedings here just as they did in the Department of Labor and third the question putting aside both what the district court said about mr. Spigarelli's testimony and whether it's admissible that's not even really the question at summary judgment the question at summary judgment is can the testimony be presented at trial in a form that would be admissible so I'm going to take each of those three arguments up in some more detail and again I'm responding to Casey Southern's argument in their brief that and this is that page 31 to 35 of their brief that the district court didn't actually weigh mr. Spigarelli's testimony and discount it based on credibility but instead excluded it as inadmissible testimony counsel can I throw you off track just momentarily I'm a your brief addresses knowledge of the protected activity and that's really you know as I read your opening brief what your appeal is about but can I ask about the protected activity itself so in the district court found as I recall the only protected activity would be the throwing of the switch but how do we how do we square that finding with the statutory language itself in that it seems that the statute requires a real urgency about the safety concern that it requires an imminency of death or grievous bodily harm and that any reasonable observer would perceive that that was the situation but as I read this and understand it mr. Berberic this was a sort of a policy that the railway had that others were following and he just disagreed with and on this instance said well I'm gonna go through the switch so how does that finding of that protected activity square with the statute sure so the first point I'd make in response to that is I don't think the statute requires a certainty that the unsafe condition will result in injury or death the testimony below excuse me that the testimony relied on a summary judgment indicates that mr. Berberic and others believe that it was unsafe to allow the engineer to just throw the air brakes on the on the train get out of the train and throw the switch themselves it's not required and you know as far as is in the record there haven't been accidents caused by that happening but it was the testimony of mr. Berberic and others that it's dangerous to do it that way that if the engineer is going to leave the control of a train they have to take the proper steps and do what's called tying the train down which is manually throwing hand brakes on a number of the cars to make sure that it's stuck to the track that it's not going to go anywhere and I don't think the FRSA requires I think it requires refusal to do that to work in an unsafe manner to do the unsafe thing that you're being asked to do I don't think it requires a certainty that if you go through with following the unsafe order that there will be an imminent accident that will cause injury or death I think you have to have a good faith belief that that's what you're doing that you're refusing to do something that could lead to injury or death but but that would be my response to that question let me pursue that what was this order that that you're relying on that said the engineers not the conductors are supposed to do that can you tell me what exactly that order said sure so it's not a written order and it's not written because it actually conflicts with KCS's Kansas City Southern Zone policies but the order was the evidence shows that it was a standing order instituted by mr. Pollard what was the the evidence was go ahead sure sure and the order was that if a conductor is remote from where the switch is that needs to be thrown then the conductor is not to be the one to walk all the way the length of the train to the front of the train to throw the switch and walk all the way back which is going to delay the train 10 20 minutes something like that but rather the engineer should be the one to get the engineers at the front of the train where the switch is in this scenario that it should be the engineer to get out of the train go through the switch and get back on the train to speed things up that's the standing order that's the evidence of that well there was some discussion who issued this order mr. Pollard and what's his what's his rank in the hierarchy he is a management level employee so he's higher than Burbridge he's lower than mr. Devaney I don't recall exactly how many steps below maybe two steps below Devaney and not in the hierarchy how did issue this order by telling so again it's not written the testimony is that he had a regular practice of telling the the engineers and the conductors that that's how it should be done and that if the that he has a regular practice of telling folks that's how it's to be done the engineers and the conductors and that he has groused to people when they don't do it that way does the record you you had a few record references in your brief when you alleged this is it that clear who who he said it to it seemed a little unclear to me it may have been a little unclear he asked who he said it to well it's important to you to have that order pinned down is it not I don't think it so I think the argument is the same and I think the arguments meritorious no matter how not no matter how but I don't think we need to go so far as to say here is a written policy somewhere that says that this house to be done I don't think we even need to go so far as to say you know Pollard told this person on this date and that person on that date in this person on this there what's the evidence that he told the conductor this as opposed to telling engineers you do it I am NOT in a better position to give a record citation than we gave in the brief I'm afraid I'm sorry of those citations that you gave in the brief is there one that says he told the conductors not to do it my my memory of what the record says on this point is that it's a general order that he's giving to everybody with some regularity not that it's okay you know everybody everybody's probably not the right word no but that it's a standing you know it's in my office we've got certain ways that we do things this this rail yard that I don't know how you pronounce it even then no knocking yard they've got a standard practice of way that they do things and mr. Pollard has being in charge of that yard the evidence there was evidence indicating that he gives this order regularly to the train the train personnel the conductors and engineers I'm not in a position to say more specifically whether it's directed specifically to the conductors or specifically to the engineers but as I understand it it's kind of a workplace procedure that he has implemented that is not written but that is understood well understood testify that he was aware of the order yes yes he did and what is the statutory can you read the statutory provision that was violated here yeah it's section 20 109 B 1 B I believe is this which says it's gonna take me a moment but I can I can get there forgive me I'm going to the response brief for that because this was an issue raised this is not not the basis for the appeal but it was raised by Kansas City Southern as an alternate theory on which the court could affirm I can tell you the gist of it is that what's refusing to work you have it okay I mean that's that's the operative term refusing to work correct correct work that he refused to do so it's not refused I would take issue with the idea that it's refusing to do any and all work whatsoever I think it's refusing to do the unsafe work or work in an unsafe manner and so what he refused to do was comply with the standing order which would have him sit back stay at the end of the train allow the engineer to get out of the train go throw the switch and get back on the train so the work he refused was to comply with the the unsafe order I don't think how did he do that he did it by saying I'm getting out of getting out of the train and saying I'll be I'll be right there getting out of the train walking to the front that's how he did that by then the engineer had already flipped the switch no no mr. Burbridge is the one that threw the switch yeah and he did so tell me if this is willing to refusing to work when confronted by a hazardous safety or security condition related to the performance of the employees duties I have a hard time seeing how doing something extra fits that language okay thank you it's an argument that was made by the by the railroad that there was no protected activity here and that's what I'd like you to explain how you fit refusing to work sure it well again I'd point back to refusing to work and I should have I should recall the language that you just gave to me but it's refusing to work in an unsafe manner refusing to follow it's refusing to work when confronted by a hazardous safety or security condition okay so the hazardous safety condition that he was confronted with was the standing order that would require him to stay on a train that was not being operated by an engineer where the engineers not on the train the engineers getting down to throw the switch and he refused to work by refusing to stay on the train and let the engineer do that he got it he said I'm gonna do it got off the train walked to the front through the switch walked back so I don't think the law it wasn't it wasn't that he refused to to work it wasn't that refused to stay where he was it was that he did something extra and that's what he's being reportedly sanctioned for and I just I have a heart I guess you've given us your best shot at hell that what he did was what he did he was he claims he was retaliated against because he went up to the front of the train and switched something right and doing that you're saying was a refusal to work refusal to work when confronted by an unsafe condition ALJ couldn't understand that do you remember that in the ALJ's opinion I do he said he didn't think or she I don't remember the gender of the ALJ but then said I don't see how there's a refusal to work here right you know that obviously we're appealing here because we take issue with the district court's opinion that section of the district court's opinion on summary judgment we think is correct we think the district court got it right that that is it doesn't explain it just says I think it is what I'm saying no yes yes the district court said I think this was a refusal to work without explanation and when the ALJ said otherwise well I district court went through the you know the factors of why it's a refusal to work said rather the the factors that are required under the b1b section when there's a refusal to work that it be made in good faith the refusal be be in good faith that there be no readily apparent other way to get around the issue so I think there is some analysis there that the district court didn't I think the analysis is correct but I do want to go back and try again to answer your concern about how that's a refusal to work and I don't think it is correct that the FRSA requires that for an activity to be protected activity that the employee refused to do anything at all I think what's required is that they refuse to work in the unsafe manner refuse to work when confronted by the unsafe condition I don't think it's required in order to qualify as that the employer just you know crosses arms and say I'm not doing anything I think it's I see that I'm out of time and I'll go ahead and finish your thought okay so I I think it requires just refusal to work when confronted with the unsafe condition the unsafe condition is the standing order he refused to comply with it and I think we have protected activity just as a district court found and with that I suppose I'm out of time so I appreciate it miss Harrison may it please the court Courtney Harrison appearing on behalf of a poli in Kansas City Southern what we have here is a case where an employee violated a major safety rule on video he was found on video to be leaning against a rail car he had no control of for 30 to 40 seconds seemingly with his legs crossed and appellant claims that when he was punished for violating that rule that he was caught on video for violating it was in fact in retaliation for him causing a train delay six weeks prior at the drista court found correctly on summary judgment that there was not sufficient evidence for appellant to satisfy his prima facie case of retaliation in Kansas City Southern respectfully requests the court affirm that and I want to talk about three things today first the rule that was violated and the evidence it was violated to the union negotiated process that occurs prior to any adverse employment action and third the actual elements of the prima facie case and the evidence that was presented actually want to jump to that third point because that's where this question of protected activity comes up and your honors hit the nail on the head there the question under the FRSA for protected activity for this provision is really twofold is there a refusal to work and was there a confrontation with a hazardous or unsafe condition there was no refusal to work here the testimony that is actually in the record and was presented to the trial court and is currently in the record on appeal is that mr. Pollard had a policy of occasionally telling engineers that they should throw the switch instead of waiting for a conductor to throw the switch there's no evidence that this was a policy that applied in every single case in fact the evidence shows it was fact-specific there's no evidence that it would hide in this case the facts show that mr. Burbridge in his own words states he was working as a conductor on the back of the train the engineer observed a switch needed to be thrown and he volunteered to go do it and then he did that there was no refusal to work there was no offer by the engineer hey I need to throw this switch that's what mr. Pollard expects you need to wait in the back none of that occurred there's no refusal to work he just did his job that did an extra duty and went up to the front of the train now importantly appellant said something just now about the hazardous and safety condition that he alleges that mr. Burbridge was attempting to avoid he admitted that engineers can properly switch a car so long as steps are taken to secure the rail car that air brakes are applied that the rail car is not going to move there are things that can be done to protect the safety and ensure that it is not a hazardous condition nowhere in the record does it say that the engineer had not secured the car that the engineer had not applied to the handbrakes that needed to be applied what we have in the record is an employee who heard that a task needed to be done took it on himself to do that task and was never punished for that afterwards counsel can I ask you're arguing the facts as it relates to this protected activity some of our questions were driven towards the law and the definition that applies under b1b in terms of the refusing to work and even if I can just look at the statutory language and sort of think the facts have some logical connection to it I did notice your response brief was pretty short on citations to authority about how we interpret this part of the statute so do you view this argument regarding the definition of refusing to work as sort of a novel legal position or what can we hang our hats on in terms of legal authority for interpreting the statute this way the plain language of the statute the statute is very clear on its face that there must be a refusal to work when confronted with a hazardous or unsafe condition that is clear in the record and there is no refusal to work here that occurred at all and notably absent from any of the briefing is any legal support for the proposition that appellant just raised that a refusal to work can encompass a refusal to do your employment activities in such a way that you believe is unsafe there's no case support for that because the statute is clear on its face the question is whether there is a refusal to work no further analysis there's a review of case law is needed the statute is clear on that point and why isn't refusing to follow the standing order why can that be construed as a refusal to work you're basically unwilling or refusing to comply with company policy why isn't that a refusal to work under the under the language that is what appellant has attempted to argue but in order to do that and I have to touch on the facts here he would have to show that there was a standing order he was refusing to comply with at that moment in time that that is actually what he was doing and that's not what the evidence in the record shows there's no evidence that on this day anybody told the engineer they needed to throw the switch mr. Burbrick needed to remain where he was the evidence is simply an observation was made that a switch needed to be thrown mr. Burbrick offered to do that and then he did so there's no evidence at all and he admits that he was not told he violated a rule that day and he didn't refuse to work he admits he didn't refuse to work what exactly did he admit he admits that he did not refuse to comply with any order that day or that he did not refuse any task that was assigned to him that day that's in the deposition that is either in the deposition or the ALJ record I don't recall but it is in our briefing that we submitted with the court I want to go back to the actual rule that led to the adverse employment action here there is it's undisputed that GS 7 is a safety rule Casey Southern has in place that prohibits a wide range of activities to protect the employees that is an undisputed fact it's undisputed that in that rule it's not allowed for an a rail car unless their job duties required so council what why does this matter for purposes of appeal as I understand it the district court found that was not protected activity and that wasn't raised by the appellant in his opening brief to challenge that finding so why does they lean against the rail car matter it matters because he is claiming that when he was punished for leaning against the rail car that was in fact retaliation for the switching incident six weeks prior and this court that requires a certain level of prima facie proof he has to prove both that the ultimate decision-maker who made the decision to make the adverse employment action was aware of the alleged protected activity and that the alleged protected activity contributed to it and this court actually recognized in Thomas the very plastics which is in the cat's paw context it's not in the FRSA context but they addressed this question of what do you do when you have an independent evaluation process that takes place because it can't be the case that an employee is permitted to so long as they have an argument of a protected activity that they are then allowed to violate the rules for the next six to eight weeks with no adverse action the question is whether or not the employer has taken the proper steps to ensure that any protected activity does not contribute to any adverse employment action so the rule that he violated in this case that led to the Employment Act it led to the termination of his employment is important because if there is as there is here undisputed evidence that he in fact violated this rule that he was allowed to defend himself in a union negotiated proceeding where he presented evidence as to why he thought he did not violate the rule and that he was thereafter punished for violating that rule which was caught on video evidence that is not retaliation under the FRSA regardless of this question of protected activity if the he's not contesting that that wasn't protected activity that he was fired for but if the punishment for that for the leaning against the rail car would ordinarily have been less or might have been less and it was retaliation for the earlier protected activity that the sanction was so harsh he would have a claim would he not if those were the facts he would but those are the facts we have here but it's not enough to say well that can't be the situation because it wasn't a protected activity for what you said so far it's not clear to me why it couldn't have been that they punished him more harshly because of the earlier protected activity because it's undisputed that the punishment for the violation of this rule could have been nothing other than termination of his employment there is an employment matrix that all of the employees are bound to it's negotiated with the Union and because mr. Burbridge has two undisputed prior violations a major infraction and a minor infraction once he violated this rule there was no leeway to do anything other than to terminate his employment that is clear in the record and it's undisputed that this matrix is enforced my correct that the district court though didn't look at the fourth element of the prima facie case at all because it decided it on the second of knowledge so this argument may have been made but for the district court I'm not suggesting it wasn't but in terms of the order that we are reviewing judge Melgren's order it did not address at all this fourth factor of the prima facie case do I have that right that's correct the court relied on the lack of knowledge that the evidence was not sufficient the admissible evidence was not sufficient to show that the ultimate decision-maker mr. Devaney had any knowledge of the alleged protected activity and that is the conclusion of his analysis of course this panel has the right to affirm on any basis that is clear in the record so long it was as it was presented to the trial court and that is the reason we are making this additional argument as to the break all of the cause breaking of the causal strain on the contribution element I want to address because it just came up this this question of knowledge that is how appellant started his brief that he wanted or his opening argument that he wanted to talk about the trial courts alleged error in analyzing whether or not the ultimate decision-maker had knowledge and there was no error there the briefing that we have submitted it is clear on that this court has held that in order to dispute a material fact sufficient to avoid summary judgment the evidence must be admissible the the witness said I heard the voice he knew who the man in the office I'm terrible with names who whom he was talking to the the judge said well he didn't even know what month it was but he did testify it was after the incident before he was fired why is that not enough to and the timing was fairly close within six weeks why is that not enough to support a finding that the that the decision-maker knew of the protected activity because of the full context of that testimony that you were just referring to what the witness said he was asked do you recall a conversation that took place after January 2019 he said he was he was then further asked about that conversation and despite knowing that the switching incident occurred in January 2019 he admitted he didn't know if the conversation he occurred how he heard occurred in December or January or even the year so when he was but he didn't elsewhere say it happened after the incident he heard the conversation after the incident no he answered that in response to a question I'm going to you I understand that you heard a question you overheard a conversation after January 2019 he said yes but then when questioned admitted he did not know when it occurred but don't these points just go to the weight that would be afforded mr. Spigarelli's testimony not if it's Spears sheer speculation Devaney testified under oath that he had no knowledge he this conversation did not occur and he had no knowledge of mr. could say you know Devaney is perhaps not being truthful or just misremembers and we think Spigarelli's testimony based upon him even being pressed in in the transcript about his recollection and he admitted it was four years ago I may not but here's what I remember the jury or any trier fact would give that greater weight and that's why we have findings in fact so how does I guess what I'm getting as I heard your argument point to be it has to be but what I really think I'm hearing is this is a weight not admissibility issue it's it's inadmissible speculation but putting that aside for a moment assuming without conceding that the panel finds it was admissible and it goes to weight it wouldn't have changed the analysis as to whether or not the decision maker made this decision to impose adverse employment actions because of the alleged protected activity six weeks earlier for all of the reasons that I've already highlighted here they all work together the elements are very intertwined and that's why we've addressed each of them even though the district court relied solely on the knowledge question and I'm running out of time and so I'll close unless the panel has additional questions with requesting that the trial courts summary judgment grant be affirmed mr. Delridge if you want to dispute if I'll give you a few seconds if you want to dispute any any facts which is what mr. Spigarelli said in the testimony that was discussed was he was asked whether he overheard a conversation shortly after the switching incident it wasn't shortly after January of 2019 it was shortly after the switching incident so to your point it is it is true that it's event event event thanks okay thank you counsel case is submitted counselor excused